UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KENNETH W. KEE                                                                             PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:11CV-P544-M

LOUISVILLE METRO DEP'T OF CORR. *et al*.                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Norris's motion for summary judgment (DN 34). Plaintiff has responded to the motion (DN 33).[1] This matter is now ripe for disposition. For the reasons set forth below, the Court will grant Defendant Norris's motion for summary judgment.

## I. SUMMARY OF CLAIMS

After performing initial review of this action, the Court dismissed all of Plaintiff's claims except for his individual-capacity claim against Defendant Norris for money damages as related to his alleged use of excessive force in violation of the Fourteenth Amendment.

Plaintiff alleges that on July 26, 2011, around five o'clock in the morning Defendant Norris entered Plaintiff's dorm, J3 6B, and woke all the inmates by yelling, cursing and throwing things. Defendant Norris allegedly accused the inmates of disrespecting a female guard. According to Plaintiff, Defendant Norris ordered the inmates to leave the dorm and go to the multi-purpose room down the hall. While Plaintiff was in the process of leaving the dorm, he states that Defendant Norris pushed him in the back and said "you think i'm a joke, I said move it." Plaintiff states that Defendant Norris's push caused his neck to snap back and he simultaneously heard a cracking sound. According to Plaintiff, he addressed his neck problem

---

[1]After ordering Plaintiff to respond to Defendant's motion for summary judgment, Plaintiff filed a letter with the Court stating that he intended his previously filed pretrial memorandum to be used as his "reply to Defendants motion" (DN 37).

with an Officer Skaggs on this same day and this Officer refused "to give [him] treatment." Plaintiff states that this push "made [him] very sore like torn muscles" and that he still has migraines.

## II. SUMMARY OF ARGUMENTS

Defendant argues that he is entitled to qualified immunity in this case. He states that in order for Plaintiff to overcome his qualified immunity defense, Plaintiff must establish "(1) that the defendant violated a 'constitutional right' and (2) that the right 'was clearly established.'" Defendant argues that Plaintiff fails to meet his burden of establishing that Defendant violated a constitutional right because the event about which Plaintiff complains never happened. In the alternative, Defendant argues that the force about which Plaintiff complains did not rise to the level of a constitutional violation.

In his response to the motion, Plaintiff essentially re-states the allegations made in his original complaint about the pushing incident. Plaintiff contends that if the log books from his prison housing unit were obtained they would show that the incident about which he complains did occur and that Defendant was involved in the incident. In support of the alleged pushing incident, Plaintiff has attached copies of previous disciplinary incidents in which Defendant was involved to show that Defendant acted similarly in the incident about which Plaintiff complains. Defendant objects to the use of these prior incident reports.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of demonstrating the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party is not required to support its motion with evidence, but need only demonstrate the absence of evidence to support the nonmoving party's claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325). Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

Although the Court must review the evidence in the light most favorable to the nonmoving party, the nonmoving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the nonmoving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *see also Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) ("The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case.").

# IV.  ANALYSIS

"The threshold inquiry in a qualified immunity analysis is whether a constitutional violation occurred at all."  *Purisch v. Tenn. Technological Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996).  In this use of excessive force claim brought under 42 U.S.C. § 1983, the "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  A pretrial detainee, such as Plaintiff, is protected from the use of excessive force by the Due Process Clause of the Fourteenth Amendment.  *Id*. at 395 n.10.  A pretrial detainee is protected from "excessive force that amounts to punishment."  *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002) (citation omitted); *see also United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007).

In the Sixth Circuit "[t]he law is unsettled as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same."  *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010); *see also Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (noting "there is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does").  However, under either an Eighth Amendment analysis or a Fourteenth Amendment analysis, "an excessive-force claimant must show something more than *de minimis* force."  *Leary v. Livingston Cnty.*, 528 F.3d at 443.  "'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'"  *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979) (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).  "Generally, a single isolated push, shove, punch, or blow by a prison guard or police officer using *de minimis* force does not rise to the level of a violation of the United States Constitution."  *Moher v. United States*, 875 F. Supp.

4

2d 739, 758 (W.D. Mich. 2012). "The point of the *de minimis* rule is to make it clear that the Constitution does not become a 'font of tort law' that the federal courts 'superimpose[] upon whatever systems' the States already have." *Leary v. Livingston Cnty.*, 528 F.3d at 445 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). Likewise, "a pretrial detainee's injuries must be more than *de minimis* to support a constitutional violation." *United States v. Budd*, 496 F.3d at 530-31.

Defendant Norris first argues that the incident about which Plaintiff complains did not happen. In his sworn affidavit submitted with his motion for summary judgment, Defendant states that during the summer of 2011, he was a supervising officer for the night shift at the Louisville Metro Department of Corrections [LMDC] where Plaintiff was incarcerated (DN 34-3, para. 4). According to Defendant, searches like those described by Plaintiff are called area searches. Defendant Norris states that his role in area searches "is limited to observing junior officers" (DN 34-3, para. 9). He describes his role in area searches as follows:

> I stand in the hallway outside of the dorm while junior officers escort the inmates out of the dorm. After the inmates have been cleared out of the dorm, I walk through the dorm, check to make sure the dorm is sanitary, and observe the junior officers as they conduct the search. Following the search, I will address any concerns or problems discovered with the inmates. As the supervising Lieutenant, I never have any physical contact with an inmate unless there is an emergency need to restore order. For example, if a junior officer is escorting an inmate that is resistant and I observe that the junior officer needs assistance in controlling the inmate, I will step in to assist. This is a very rare occasion. For example, over the last year, I can remember only three occasions when I had physical contact with an inmate where either myself or another officer was applying a use of force technique. All incidents of use of force are documented with an incident report. At LMDC, even what may be considered mild physical contact is documented as a use of force. For example, use of "soft empty hand" techniques, such as when an officer physically walks an inmate from point A to point B is documented with an incident report.

5

(DN 34-3, paras. 9-11). Defendant, by sworn affidavit, states that he has no recollection of the incident Plaintiff describes in his complaint (DN 34-3, para. 6). Defendant further swears that he is certain that he never pushed Plaintiff in the back during an area search as Plaintiff claims (DN 34-3, para. 7). As support of his contention that the pushing incident did not occur, Defendant states that if the pushing incident had occurred it would have been documented with an incident report. Defendant states that no such report exists (DN 34-3, para. 12). Further, Defendant explains that the fact that no video recordings of the alleged use of excessive force exist support the fact that the incident never occurred. Defendant explains that "[a]s part of its security protocol, the LMDC has a video surveillance program which records most areas of the correctional facility 24 hours a day" and that unless the recordings "capture an incident of use of force, physical altercation or other incident which may need to be reviewed," the video is recycled (DN 34-3, paras. 13 & 14).

Defendant has also submitted a copy of Plaintiff's dorm assignment while he was housed at LMDC and various medical records (DNs 34-6, 34-7, 34-8 & 34-9). According to these records, Plaintiff entered the LMDC on or about July 15, 2011 (DN 34-7). Prior to his incarceration in the LMDC, Plaintiff was involved in a motor vehicle accident while fleeing from police. He then fled the scene of the accident and floated in the Ohio River for more than 12 hours before being apprehended (DN 34-9, p. 5). After being apprehended, Plaintiff was treated at University of Louisville Hospital (DN 34-9, p. 5). Soon after his arrival at the LMDC, Plaintiff complained of back pain (DN 34-9, p. 5). On July 18, 2011, Plaintiff requested to be seen by medical because he "need[ed] [his] back checked for extreme pain" (DN 34-8, p. 30). At that time Plaintiff was seen by a physician who noted his complaints of back pain (DN 34-9,

6

p. 5). He again requested to be seen for back pain on July 22, 2011 (DN 34-8, pp. 33-34). None of the medical records reflect any complaints by Plaintiff of back pain, neck pain, or headaches after this date. Although Plaintiff was seen by medical subsequent to the alleged pushing incident by Defendant, July 26, 2011, none of the medical records reflect that he complained of or was treated for any of the types of pain he alleges resulted from the pushing incident.

In response to Defendant's motion for summary judgment, Plaintiff states that although he asked for the "J3 Floor log book" he was only provided the log book for the north side and not the south side where he was housed. Plaintiff states that "[t]his log book would very clearly prove not only [Defendant's] attendance but as well his participation on an issue he does not recall and denies even being there or occuring" (DN 33, p. 2).[2] Contrary to Plaintiff's assertion, the log book fails to show that any area search occurred in Plaintiff's prison dorm on July 26, 2011 (DN 34-2).

Also in response to Defendant's motion for summary judgment, Plaintiff attaches two documents embodying disciplinary action taken against Defendant in late 2001 and early 2002 and a copy of a memorandum sent to Defendant on January 13, 2003, which informed him of his removal from the Corrections Emergency Response Team because of his involvement in one of the incidents for which he received disciplinary action (DN 33-1). Rule 404(b) of the Federal Rules of Evidence states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

---

[2] Defendant explains that he initially failed to produce the south side log book because it was not produced to him by the LMDC. Once the error was realized and the documents produced to Defendant, he represents that he mailed Plaintiff a copy of the south side log book. These documents were produced to Plaintiff on April 5, 2013, many months prior to this Court's deadline for Plaintiff to respond to Defendant's motion for summary judgment. Yet, Plaintiff has not produced a copy of the log book or any evidence that the log book supports his position. Defendant has provided a copy of the log book.

7

accordance with the character." Before a court can admit similar-acts evidence that would otherwise be prohibited under Rule 404(b), the court must determine "whether the evidence is probative of a material issue other than character." Plaintiff argues that the prior acts "prove[] Defendant is capable of Excessive Force, lying, covering up and anger issues" (DN 33). The use of this prior conduct for the purpose of showing character, as Plaintiff desires to do, is prohibited. *See Franklin v. Messmer*, 111 F. App'x 386, 388 (6th Cir. 2004) (wherein prior conduct evidence was not admissible to show that the officer had a propensity to use excessive force); *White v. Deghetto*, No. 5:09-CV-139, 2011 WL 940815, at *2 (W.D. Ky. Mar. 16, 2011) (officer's prior disciplinary actions were inadmissible to prove the officer acted in conformity therewith); *Johnson v. Baker*, No. 1:08-CV-00038, 2009 WL 3486000, at *8 (W.D. Ky. Oct. 23, 2009) (granting motion in limine to exclude evidence that defendant officer had used excessive force in prior instances to show that he had a propensity to use excessive force).

Plaintiff has put forth no evidence to refute Defendant's sworn statement or to support his allegation that Defendant pushed him in the back resulting in neck pain and headaches. Although Plaintiff contends that the log book would support his account of the incident, it does not. There is no entry in the log book that the July 26, 2011, incident about which Plaintiff complains occurred. In addition, there is no incident report regarding the alleged pushing. Plaintiff represented in his complaint that he filed grievances about the alleged pushing incident; however, he has failed to produce any of them to the Court. Further, Plaintiff's medical records produced by Defendant Norris are void of any complaints of neck pain and headaches, and Plaintiff has failed to produce any medical records supporting his complaints. Plaintiff is left solely with the unsupported statements he made in his complaint. The Court need not accept

8

unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). "'When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Plaintiff has failed to meet his burden of setting forth "specific facts showing a triable issue." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). Thus, Defendant is entitled to summary judgment.[3]

## V. ORDER

For the reasons stated above, Defendant Norris's motion for summary judgment (DN 34) is **GRANTED**.

The Court will enter a separate Judgment consistent with this Memorandum Opinion and Order.

Date: September 30, 2013

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
 Counsel of record
4414.003

---

[3] Having determined that Plaintiff has failed to meet his burden of showing the incident about which he complains occurred, the Court need not address the *de minimis* force and *de minimis* injury inquiries. However, the same failure of Plaintiff to show a triable issue as to the occurrence of the events about which he complains would likewise be significant in a *de minimis* force and injury analysis.

9